Totten, J.,
delivered the opinion of the court
The prisoner, Daniel McCarn, was indicted in the circuit court of Hardin, as accessory before the fact, to a felony committed by David, a negro slave, the property oí the prisoner, The felony, committed by David, the slave, is alleged to consist, in a felonious and malicious assault upon the person of Elizabeth McCarn, a free white woman, by shooting at her with a gun, with the intent, her, the said Elizabeth, to kill and murder in the first degree.
The prisoner, by counsel, moved the court to quash the indictment, and the judgment thereon being that the same be quashed, the State has appealed in error to this court.
The question is, whether the prisoner is criminally liable, as for a felony, upon the facts stated in the indictment; or, in other words, whether it is to be considei'ed, as a good and valid indictment.
*497 By the act of 1835, ch. 19, sec. 10, it is declared that, “any slave or slaves, who shall commit an assault or battery upon any free white person, with intent to commit a murder in the first degree, shall, on conviction, be punished with death, by hanging.”
The offence committed by David, the slave, is, therefore, a capital felony, for which he is liable, in his own person, as a principal offender.
Now, it is averred in the indictment, that before the fact, the prisonor did incite, move and command his said slave, to commit the offence. He is, therefore, guilty of a criminal act, and the grade of his crime is either as a principal or an accessory. If the slave were so far under his dominion' as to be bound to obey his commands in this respect, then, the slave should not be held ci’iminally liable for an act, which he could not refuse to perform. But on the contrary, the master should be regarded as the principal felon, and the slave as an irresponsible instrument or agent,-acting on compulsion and necessity, and not of his own will. For, “when an offence is committed through the medium of an innocent agent, the employer, though absent when the act is done, is answerable as a principal. 1 Russell on Or. 27.
But as the master has no such power and dominion over his slave, and as the slave may lawfully resist his command to perpetrate a crime, the act of a slave, in the commission of crime, is to be considered as his own act; and it is no excuse or defence for him, that he was acting under the orders of his master.
The slave, who actually committed the offence is therefore, to be regarded as a principal felon, and his master, who was not present at the time, but had commanded it to be done, cannot, in any sense, be regarded as a principal, and must therefore, of necessity, be regarded as an accessory. For, a
principal is the actor or absolute perpetrator of the crime, or *498 one who is present, aiding and abetting the fact to be done; while the accessory is he, who is not the chief actor in the offence, nor present at its performance, but is some way concerned therein, either before or after the fact committed. 4 Comm. 34.
If the master be not an accessory, then, in view of the facts stated, he is not to be regarded as liable for any offence, which would certainly be a great absurdity, both in morals and in law. See 2 Hawkins P. C. 440, sec. 11.
Assuming then, that the slave may be a principal and the master his accessory, in the commission of crime; the next inquiry in the present case is, in what manner is the master, upon conviction, to be punished.
We have seen, that the offence charged upon the principal, is a felony, and it is a principle in law, which can never be controverted, that he who procures a felony to be done, is himself, a felon. 1 Russell on Cr. 32.
Now, as to the punishment of such felon, the general rule of the common law is, that accessories shall be punished in the same manner as their principals. 4 Oomm. 39. And it is also an inflexible principle, that the offence of the accessory, and consequently his punishment, can never rise higher than that of the principal. Because, as it is said, in 2 Hawkins P. 0. 442, sec. 16, it is incongruous and absurd, that he who is punished only as a partaker of the guilt of another, should be adjudged guilty of a higher crime than the other. These rules apply, whether the fact committed be an offence at the common law or be made so by statute. 2 Hawk. P. 0. 441. 6 Danes’ Ab. 650.
The same principal is carried into our criminal code, 1829, ch. 23, sec. 63, which provides, that accessories before the fact, “shall be punished, as their principals are punished.”
Now, for an assault upon any free white person, with intent to commit murder in the first degree, if done by a slave, *499 the punishment is death; if done by a free white person, it is confinement in the penitentiary, for a period, not less than three, nor more than twenty-one years. 1835, ch. 19; 1829, ch. 23, sec. 52.
The offence is the same; the punishment only is different, in reference to the two races. The distinction being made in the punishment of the principal offenders, we think it a just and reasonable construction of the statutes, to observe the same distinction, in the punishment of accessories. The prisoner is to be regarded as an accessory to a given offence, that is, to an assault, with intent to commit murder. Under the code, which applies to him, he is guilty of a felony, and liable to be punished, not with death, but by a protracted imprisonment. If he had been the principal, and done the act in person, he would be liable to the same punishment. It is true, that upon principle, strictly and rigidly applied, he is liable to the same punishment as the slave ; that is, the punishment of death; and it may be consistent with both justice and policy, that an offence so atrocious, and so easily perpetrated by the agency of slaves, should be so punished. That, however, is a matter for legislative consideration. -But construing the law as it now stands, and giving effect to its manifest intention and policy, we cannot, in a matter open for construction, disregard the distinction it makes, in reference to the punishment of free white persons and slaves.
The pervading policy of the code is, that capital punishment shall not be inflicted, except in the case ■ of murder in the first degree, actually perpetrated. For an assault, with intent to commit that offence, a less punishment is to be inflicted ; and in each case, accessories before the fact, are to be punished as their principals. We must regard this code as in some degree, restrictive of the direct and literal operation of the rule of common law before referred to, and confine the punishment of the accessory, to limits prescribed by *500 the code, though his principal in the same offence, be subjected to a greater punishment.
The Judgment will be reversed, and the prisoner remanded, subject to further proceeding.